REYNOLDS, Inspector in Charge, U. S. Immigration Service, v. UNITED STATES ex rel. KOLEFF (two cases).

Nos. 5017, 5018.

Circuit Court of Appeals, Seventh Circuit.

Feb. 23, 1934.

Rehearing Denied May 11, 1934.

James R. Fleming, of Portland, Ind., and George L. Rulison and William B. Duff, both of South Bend, Ind., for appellant.

W. B. Rosczyk, of East Chicago, Ind., and David H. Feldman, of Chicago, Ill., for appellees.

Before SPARKS, FITZHENRY, and PAGE, Circuit Judges.

PAGE, Circuit Judge.

While Lazo Koleff (No. 5017) was held under a deportation warrant, in which it was stated "that he has been found managing a house of prostitution, or music or dance hall or other place of amusement, or resort, habitually frequented by prostitutes, or where prostitutes gather, and may be deported in accordance therewith," and his son, Boris Lazo Koleff (No. 5018), was held under a deportation warrant, in which it was stated "that he has been found managing a house of prostitution, or music or dance hall or other place of amusement, or resort, habitually frequented by prostitutes, or where prostitutes gather; that he is employed by, in, or in connection with a house of prostitution or music or dance hall or other place of amusement or

resort habitually frequented by prostitutes, or where prostitutes gather; and that he has been found receiving, sharing in, or deriving benefit from the earnings of a prostitute, and may be deported in accordance therewith," they were discharged by the United States District Court at Hammond, Ind., in a habeas corpus proceedings on the theory that in the hearing to show cause why they should not be deported they were not accorded due process of law and that the hearing was unfair. This is a joint appeal from the judgments in the District Court.

Though requested by respondent to do so, the District Court made no finding upon the sufficiency of the evidence taken before the inspector, but limited its findings of fact to those matters bearing upon the acts of Inspector Goodall, viz.: That aliens were arrested upon telegraphic warrants; that before warrants were issued aliens were questioned by the inspector; that:

"The inspector, before whom the case was heard or tried, made a thorough and complete investigation of the case in advance of the hearing; procured the evidence; conducted the direct and cross-examination of witnesses; was sworn and testified to material matters; made findings of fact based on the evidence, including his own, and announced conclusions, which findings and conclusions were reported to the Secretary of Labor."

"The petitioner, in both of the above cases, was not accorded due process of law, and the hearing in each of said cases was unfair."

Counsel for aliens has discussed the evidence at great length, to establish his contention that there is no evidence to support the charges against aliens, and has succeeded in showing, not that there is no substantial evidence, but that it is much controverted.

■ The inquiry into violations of the Immigration Act is a civil administrative proceeding committed by the Congress to the Department of Labor, and that department's determinations in these cases were not subject to review in the District Court except to inquire as to whether aliens' constitutional rights had been violated.

■ Whether there was any substantial evidence was open to inquiry, but the weight of the evidence, where there was substantial controversy, was not open to inquiry. Whitfield v. Hanges (C. C. A.) 222 F. 745, 751.

■ On the hearing before the board of review in warrant proceedings in the Department of Labor it was found:

"The Immigrant Inspectors V. D. Waters and B. Goodall testified that they were solicited by a prostitute in the room of John Jones. The charge in the warrant that these aliens are connected with the management of a house of prostitution is clearly proved by the testimony."

"The attorney for the alien admits that the testimony shows that he was the manager of a house of prostitution, but claims that two of the witnesses, Louise Mack and Policeman Roberts were angry at the alien for the reason that he demanded rent due him from them."

These findings are in no way controverted nor questioned. The failure of the District Court to make any finding on the evidence in support of the charges, which was a question in issue, was equivalent to a finding on that point against aliens who had the burden in the habeas corpus proceedings.

■ Under the department regulations telegraphic warrants are authorized. The warrants of arrest show that they were regularly issued.

■ At the outset of the hearing before the inspector, the record shows that aliens saw and had the warrants explained to them; neither aliens nor their counsel at any time made any objection thereto. Those warrants were issued January 9, 1932, after Goodall and other inspectors from the Department of Labor had made inquiries at Hammond, Ind., concerning a reported violation by aliens of the immigration laws. Inquiries were made of various persons both inside and outside of the Hammond Hotel, where it was claimed that the offenses charged were committed. January 8th, before a warrant was received, Goodall made to Lazo Koleff the following statement and received from him the following answer: "You are advised that I am an Immigrant Inspector in the service of the United States, and that I desire to question you as to your right to be and remain in the United States. You may answer my questions, or not, as you like. You are advised that any statement you make to me may be used against you in future criminal proceedings. Are you willing to answer such questions? A. Yes."

Whereupon Lazo made a written statement under oath.

Goodall, after making to Boris Lazo Koleff (5018) the same statement made to Lazo Koleff and receiving a like answer thereto, took a sworn statement from Boris Koleff. Two days later a hearing was held to permit

aliens to show cause why they should not be deported. Each alien was represented by counsel.

Before those written statements were put in evidence, Lazo testified: "I am the same Lazo Koleff who made a sworn statement before you at the Hammond Hotel, Hammond, Indiana on January 8th, 1932. Statement marked Exhibit A and hereto attached was read to alien and he then stated it was all true and correct."

Boris testified: "I am the same Boris Lazo Koleff who made a sworn statement before you at the Hammond Hotel, Hammond, Indiana on· January 9, 1932." (Statement read to alien). "That is all true and correct."

To a direct question while testifying, Boris replied that he was entirely satisfied with treatment given him by the immigration service.

In the Lazo affidavit there is nothing that could have prejudiced his case. In the Boris statement there is this: "Are you the joint proprietor of the Hotel with your father and mother? A. Yes."

As above set forth, after his statement had been reread to him, Boris reaffirmed the truth of all of the answers in his statement. He also said he thoroughly understood the nature of the proceedings and that he understood all the questions.

It is true that he elsewhere explained that he had sold out his interest, but that explanation is not very convincing. He was twenty-six years old and spoke only the English language. The statements were freely made without any previous threat or coercion. Such statements are not unfair. Ungar v. Seaman (C. C. A.) 4 F.(2d) 80, 85; U. S. ex rel. Bilokumsky v. Tod, 263 U. S. 149, 155, 156, 44 S. Ct. 54, 68 L. Ed. 221.

■ The fourth finding of fact covers things found to have been done by Inspector Goodall. We are of opinion that all of them save only, perhaps, the testifying under oath, were clearly within the line of his duty as an inspector, and, if fairly done, are not open to criticism. There is always a presumption that an officer's acts are fair.

Other than the attempt to raise a legal presumption in behalf of his clients, counsel does not make any claim that aliens were injured or prejudiced in any way by anything done by the inspector or by his manner of doing those things.

The record is wholly free from any indication of prejudice on the part of the inspec-
tor and of any acts of oppression or mistreatment of either of aliens.

■ In the Lazo case where Inspector Goodall testified under oath, counsel, when asked, said he did not wish to cross-examine him. At the same time counsel complains that there was no opportunity to cross-examine Goodall in the Boris case, because he there simply made a statement, not under oath, and there was no opportunity to cross-examine.

Those arguments are not persuasive—particularly in view of the fact that no question was raised at the time as to right of the inspector to testify in the one case or to make a statement in the other. No injury or prejudice to aliens' rights is shown.

This case is wholly free from those acts and methods of oppression and coercion shown in cases relied on by aliens.

There was no denial of due process, and the hearing was not unfair.

For these reasons, the orders of discharge in the District Court are reversed, and the cases are remanded to that court, with directions to enter orders in harmony with these findings and conclusions, and that that court shall remand the aliens to the custody from which they were taken.